**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Son Anh CHU, Defendant–Appellant.**

**No. 92–50295.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1993.

Decided March 16, 1993.

Joseph T. Vodnoy and Joseph F. Walsh, Los Angeles, CA, for defendant-appellant.

George S. Cardona, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BEEZER, BRUNETTI and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Son Anh Chu appeals his convictions for possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1) (1988), and importation of heroin, 21 U.S.C. § 952(a) (1988). Chu contends the district court erroneously instructed the jury that possession of a substantial quantity of a controlled substance alone may be sufficient to support a finding of knowing possession. We have jurisdiction under 28 U.S.C. § 1291. We hold the instruction was erroneous, reverse Chu's convictions and remand for retrial.

Customs agents detained Chu at Los Angeles International Airport after he arrived on a flight from Thailand. Chu was en route to New York City after spending three months in Asia, mostly in Vietnam. Chu was carrying 2,775 grams of heroin with a street value of approximately $11 million. The heroin was concealed inside lacquerware picture frames, which were packed inside a sealed box in Chu's suitcase.

Chu conceded that he possessed the heroin, because it was found in his suitcase, but he contended that he did not know it was there. He testified that the picture frames were already packed in the sealed box when the box was given to him by a family friend in Vietnam. He also testified that the family friend told him a resident of Toronto would contact him in New York City to arrange to pick up the box.

Chu unsuccessfully objected to the following jury instruction proposed by the government:

> In addition to any other evidence in determining whether defendant knowingly possessed a controlled substance, you may consider the quantity of the controlled substance involved. Possession of a substantial quantity of a controlled substance alone may be sufficient to support a finding that a defendant knowingly possessed that controlled substance.

Chu was convicted and sentenced to 121 months imprisonment. The issues we consider in this appeal are: Was the challenged jury instruction erroneous, and if so was the error harmless?

■ Whether a jury instruction misstates an element of a crime is a question of law which we review de novo. *United States v. Johnson*, 956 F.2d 197, 199 (9th Cir.1992). "A single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *United States v. Marsh*, 894 F.2d 1035, 1040 (9th Cir.1989) (citations omitted), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990).

■ Chu contends that the challenged jury instruction is erroneous under *United States v. Rubio–Villareal*, 967 F.2d 294 (9th Cir.1992) (en banc). In *Rubio–Villareal*, we reversed the defendant's conviction because the district court instructed the jury:

> You are instructed that if you find that the defendant was the driver of a vehicle containing contraband in this case; and if you find that the cocaine was found inside that vehicle and concealed in its body, you may infer from these two facts, that the defendant knew that the cocaine was in the automobile; however, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts

and circumstances shown by the evidence in this case warrants any inference which the law permits the jury to draw. *Id.* at 295.

The instruction in Chu's case suffers from the same flaws as the instruction in *Rubio–Villareal*. As in *Rubio–Villareal*, the *Chu* instruction incorporates language which we have used to describe sufficient evidence to support a conviction for knowing possession of contraband with intent to distribute. We concluded in *Rubio–Villareal* that this was a "questionable step in our reasoning." *Id.* at 296. Although we have held, as the *Chu* instruction says, that possession of a substantial quantity of narcotics is sufficient evidence of knowing possession,[1] in the cases where we have said this, the verdict was already in and we were determining whether *any* rational trier of fact could have found the defendant guilty of knowing possession beyond a reasonable doubt by drawing the inference of knowledge from the quantity of drugs possessed. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Here, the knowing-possession language was included in the instruction given to the jury to guide its deliberations as it considered the question of Chu's guilt. The challenged instruction effectively told the jury that because Chu was carrying a large quantity of heroin, the jury could disregard all other evidence and convict him of knowing possession. As in *Rubio–Villareal*, this "focused the jury on [one] rather than all the facts." *Rubio–Villareal*, 967 F.2d at 299; *see also Schwendeman v. Wallenstein*, 971 F.2d 313, 316 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 975, 122 L.Ed.2d 130 (1993).

There were other facts. Chu's defense was that he was a "blind mule" who did not know he was carrying narcotics. He testified that the lacquerware picture frames were given to him in the box by a

---

1. *See, e.g., United States v. Barbosa*, 906 F.2d 1366, 1368 (9th Cir.), *cert. denied*, 498 U.S. 961, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990); *United States v. Mora*, 876 F.2d 76, 77–78 (9th Cir. 1989); *United States v. Savinovich*, 845 F.2d 834, 838 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *United States v. Walitwarangkul*, 808 F.2d 1352, 1354 (9th Cir.), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1909, 95 L.Ed.2d 515 (1987); *United States v. Collins*, 764 F.2d 647, 652 (9th Cir.1985).

family friend in Vietnam. He did not open the box, but simply put it in his suitcase to take to New York as the friend had asked. His fingerprints were not on the picture frames. When the box was found in his suitcase, it was sealed. Chu testified that he had traveled to Vietnam on a business trip, and had just a one-day layover in Thailand before flying to Los Angeles. His business records from the trip support an inference that he actually traveled on business.

There was other evidence that Chu knowingly possessed the heroin. Chu had just been to Thailand, a known source country for narcotics. When he arrived at Los Angeles International Airport, he acted in a manner that aroused the suspicion of a customs screening officer. He initially told customs officers he had been in China, though in truth he had been in Vietnam. According to gambling records introduced by the government, Chu had access to large amounts of cash immediately after a previous visit to Thailand. Chu explained that he gambled with money he had saved, money lent by his girlfriend, and his previous winnings. Chu's explanation was not particularly credible given the evidence of his meager financial resources.

Chu's story that he received the box of picture frames from a family friend also had some weaknesses. He testified the box was in his suitcase when he left Vietnam for Thailand, but the government's expert testified that the heroin found in the picture frames in the box was most likely produced outside of Vietnam and it was unlikely that heroin would be smuggled into Vietnam just to be smuggled out again. Chu also admitted that his luggage had been searched before leaving Vietnam without the heroin being discovered.

Chu could not provide a last name, address, or phone number for the individual in Vietnam who allegedly gave him the box of picture frames. Nor could he give more than a first name for the intended recipient in New York. He explained that Vietnamese do not use their last names in introductions, making it impossible for him to provide more information. Although Chu's fingerprints were not on the picture frames, supporting his contention that the frames were given to him already packed in the sealed box, in rebuttal the government introduced evidence that lacquerware frames do not yield good prints and that drug couriers often keep their prints off of the drug containers.

The jury had the obligation to sift through all of this evidence and determine whether Chu was guilty. When the court told the jury it could convict Chu by considering only the fact that he had in his possession a substantial quantity of a controlled substance, it conveyed the message that it had considered all of the evidence and found this one piece of evidence to be determinative to the exclusion of all else. By this instruction, the court improperly intruded on the jury's deliberative process. *See Rubio–Villareal,* 967 F.2d at 299.

The government argues that the *Chu* instruction is distinguishable from the *Rubio–Villareal* instruction because the inference of knowledge from possession of a large quantity of drugs, as in *Chu,* is allegedly much stronger than the inference of knowledge from simply driving a vehicle containing drugs, as in *Rubio–Villareal.* We disagree. An individual may unknowingly possess a substantial quantity of narcotics, just as he may unknowingly transport contraband in a vehicle.

The government also argues we should uphold the *Chu* instruction because it is substantially the same as a consciousness of guilt, or *Jewell,* instruction. See *United States v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); Model Crim.Jury Instr. for the Ninth Circuit 5.07 (1992) ("You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that [*e.g.,* drugs were in his automobile] and deliberately avoided learning the truth."). We reject this argument. There is a striking difference between a *Jewell* case and this case. Deliberate ignorance of contraband in one's possession is equivalent to knowing possession. *See Jewell,* 532 F.2d at 700 ("deliberate ignorance and positive knowledge are equally culpable"). A *Jewell* instruction does not tell the jury it may infer knowl-

edge from a single fact. It tells the jury it may convict in the absence of actual knowledge if it finds the elements of deliberate ignorance.

■■■ We hold that the district court erred in instructing the jury as it did on the question of knowing possession. "[A]n error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt." *United States v. Rubio–Villareal*, 967 F.2d at 297 n. 3.

In *United States v. Koshnevis*, 979 F.2d 691 (9th Cir.1992), we concluded "that there [was] no reasonable possibility that the verdict would have been different had the allegedly improper instruction not been given." *Id.* at 696. There, the defendant made a statement to the arresting officer that implied he knew he was carrying methamphetamine. Drugs were found both on his person and in the trunk of the car he was driving. He had "all the tools of the trade" in his possession. *Id.*

Here there is certainly enough evidence from which the jury could have convicted Chu of knowing possession of the heroin in his suitcase. But it is not so overwhelming that we can say with confidence that "there is no reasonable possibility that the [erroneous jury instruction] materially affected the verdict." *Rubio–Villareal*, 967 F.2d at 297 n. 3.

Because of the flawed instruction, Chu is entitled to another trial.[2] Chu is entitled to a retrial of the importation charge as well. *See United States v. Sanchez–Robles*, 927 F.2d 1070, 1072, 1074–75 (9th Cir.1991) (reversing convictions for both possession with intent to distribute and importation because the district court erroneously gave a *Jewell* instruction).

REVERSED and REMANDED.

[2]. We do not reach Chu's other contentions on appeal.